UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
ANNIE JOUANNY,                      )
                                    )
    **Plaintiff,**              )
                                    )
    v.                          )    Case No. 1:16-cv-00135 (APM)
                                    )
EMBASSY OF FRANCE IN THE            )
UNITED STATES,                      )
                                    )
    **Defendant.**              )
_____ )

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

Plaintiff Annie Jouanny is a receptionist at Defendant Embassy of France in the United States ("Embassy" or "Defendant"). She filed this action against the Embassy alleging age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. In a prior ruling, the court granted Defendant's Motion to Dismiss on the ground that Plaintiff had not effectuated proper service. The court, however, allowed Plaintiff the opportunity to properly serve Defendant, which she subsequently did.

Defendant now renews its Motion to Dismiss on the grounds that the court did not reach in its prior decision, namely that (1) Plaintiff did not timely file suit and (2) the Complaint fails to state a claim for relief for either discrimination or retaliation under the ADEA. The court concludes that Plaintiff's suit was timely filed and that she has successfully stated a retaliation claim under the ADEA. The court finds, however, that Plaintiff has not pleaded a cognizable age discrimination claim. Accordingly, the court grants in part and denies in part Defendant's Motion to Dismiss.

## II.  BACKGROUND

Plaintiff Annie Jouanny is a sixty-six year old woman employed by Defendant Embassy of France in the United States ("Embassy" or "Defendant"). In March 2014, Defendant informed Plaintiff that she would be terminated from her position as an Embassy receptionist, effective November 30, 2014. *See* Compl., ECF No. 1 [hereinafter Compl.], ¶ 17. At the same time, she learned that the Embassy planned to retain her co-worker, Diane Ngandjeu, who was under 40. *Id.* After unsuccessfully lobbying to keep her job and refusing to accept a position as a security officer, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on October 25, 2014, alleging age discrimination. *Id.* ¶¶ 18–20, 25, 33.

On November 19, 2014, Defendant rescinded its notice of termination and offered to keep Plaintiff on as a receptionist for another year. *Id.* ¶ 35. Plaintiff accepted, but her working conditions changed. *Id.* ¶ 37. According to Plaintiff, her workload nearly doubled, her supervisor refused her requests for assistance, and she experienced health issues due to work-related stress. *Id.* ¶¶ 44–46, 49–50. Meanwhile, Defendant offered Ngandjeu, Plaintiff's under-40 co-worker, a more favorable position as an administrative employee in the Secretary General's office, which allegedly involves a lighter workload. *Id.* ¶¶ 39–44. As the longest tenured employee at the Embassy, Plaintiff claims she was more qualified than Ngandjeu for that position. *Id.* ¶ 39.

After her administrative efforts came to an end, Plaintiff filed her Complaint in this court on January 27, 2016, seeking relief under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. *See* Compl. Defendant filed a Motion to Dismiss on July 24, 2016, which advanced three grounds for dismissal: (1) insufficient service of process under Rule 12(b)(5) of

the Federal Rules of Civil Procedure; (2) failure to timely file a complaint under Rule 12(b)(6);[1] and (3) failure to state a claim upon which relief can be granted under Rule 12(b)(6). *See* Def.'s Mot. to Dismiss, ECF No. 10 [hereinafter Def.'s Mot.]. On December 9, 2016, the court granted Defendant's Motion on the sole ground that Plaintiff had failed to effectuate proper service, but granted Plaintiff leave to correct that deficiency. *See Jouanny v. Embassy of France in the United States*, No. 1:16-00135, 2016 WL 7156465 (D.D.C. Dec. 7, 2016). Plaintiff properly served Defendant on January 19, 2017, and, on February 3, 2017, Defendant renewed its Motion to Dismiss on the grounds the court previously left unaddressed. *See* Def.'s Acknowledgment of Service and Renewal of Mot. to Dismiss, ECF No. 19. The court now turns to Defendant's remaining arguments for dismissal of the Complaint.

### III. LEGAL STANDARD

In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept a plaintiff's factual allegations as true and "construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). The court need not accept as true either "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[1] Defendant incorrectly frames its untimeliness argument as one arising under Rule 12(b)(1) for lack of subject matter jurisdiction. That argument is not a jurisdictional one but, instead, an argument for failure to state a claim under Rule 12(b)(6). *See Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1116 (D.C. Cir. 1985) (Wright, J.).

3

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The factual allegations in the complaint need not be "detailed"; however, the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. If the facts as alleged fail to establish that a plaintiff has stated a claim upon which relief can be granted, then a court must grant the defendant's Rule 12(b)(6) motion. *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.,* 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

## IV. DISCUSSION[2]

### A. Whether Plaintiff Timely Filed Her Complaint

The court begins with Defendant's contention that Plaintiff did not file suit on time. *See* Def.'s Mot. at 7–8. A plaintiff bringing an action under Title VII of the Civil Rights Act must file suit "within ninety days after obtaining notice of right to sue from the EEOC." *Dougherty v. Barry*, 869 F.2d 605, 609 (D.C. Cir. 1989) (citing 42 U.S.C. § 2000e−5(f)(1)). That same deadline applies in ADEA cases. *See* 29 U.S.C. § 626(e). Here, Plaintiff's original EEOC right-to-sue letter is dated Thursday, October 22, 2015. *See* Am. Status Report, ECF No. 23, Ex. 2, ECF No. 23-2. Plaintiff does not, however, specify the date on which she received that letter, *see* Compl. ¶ 9, and so the court will assume that she received it three days later, which would be Sunday, October 25, 2015. *See Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984) (applying the presumptive three-day allowance set forth in Federal Rule of Civil Procedure 6(e)

---

[2] Although Defendant has not raised the issue, the court is satisfied that it has subject matter jurisdiction over this case under the commercial activities exception of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(2), because Plaintiff is a purely clerical employee hired on a contract basis. *See Hadad v. United Arab Emirates*, 216 F.3d 29, 34 (D.C. Cir. 2000); *Ashraf-Hassan v. Embassy of France in the United States*, 40 F. Supp. 3d 94, 102–03 (D.D.C. 2014).

for receipt of filings by mail); *Coleman v. Potomac Elec. Power Co.*, 310 F. Supp. 2d 154, 158 (D.D.C. 2004) (same). Therefore, to be timely, Plaintiff had to file her Complaint no later than Monday, January 25, 2016.[3] Plaintiff did not, however, file suit until Wednesday, January 27, 2016. *See* Compl.

Plaintiff nevertheless defends her Complaint as timely filed. She contends that the courthouse was closed due to inclement weather on January 25 and 26, 2016, *id.* ¶¶ 9–10, which rendered the clerk's office "inaccessible" for purposes of calculating the last day of the limitations period under Rule 6. Pl.'s Opp'n to Def.'s Mot., ECF No. 20 [hereinafter Pl.'s Opp'n], at 3; *see Banks v. Chesapeake & Potomac Tel. Co.*, 802 F.2d 1416, 1418 (D.C. Cir. 1986) (applying Rule 6 when calculating the last day of a limitations period). Rule 6(a)(3)(A) provides that, "[i]f the clerk's office is inaccessible, on the last day for filing under Rule 6(a)(1), then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday." As the courthouse was closed to the public on January 25 and 26, 2016, Plaintiff maintains that she timely filed her Complaint on the day that the clerk's office re-opened: January 27, 2016.

Defendant counters that the courthouse's closing does not save Plaintiff's otherwise untimely filing. According to Defendant, the fact that the courthouse is closed does not mean the clerk's office is "inaccessible" for purposes of Rule 6(a)(3)(A), because Plaintiff had access to the court's electronic case filing system, "which remained opened and operational at all times." Def.'s Mot. at 7. Defendant's argument is not without foundation. A number of federal district courts have held that, "given the advent of electronic case filing (ECF), a clerk's office is no longer 'inaccessible' just because it may be physically closed on a particular day." *Domazet v.*

---

[3] Technically speaking, the 90-day period expired on a weekend day, and so, by operation of rule, Plaintiff's Complaint was due no later than the next Monday, January 25, 2016. *See* Fed. R. Civ. P. 6(a)(1).

5

*Willoughby Supply Co.*, No. 14-1455, 2015 WL 4205279, at *3 (N.D.N.Y. July 10, 2015) (collecting cases).

This court, however, disagrees with those decisions based on the history of Rule 6 and this Circuit's precedent. Although Rule 6 does not define "inaccessibility," its history demonstrates that its drafters did not intend for the advent of electronic filing to alter the circumstances in which the clerk's office was deemed inaccessible. The word "inaccessible" first appeared in the Rule in 1985, when Rule 6(a)(3) was amended to read:

> [T]he last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the district court inaccessible.

Fed. R. Civ. P. 6(a)(3) (1985) (amended 2009). That amendment "acknowledge[d] that weather conditions or other events may render the clerk's office inaccessible one or more days" and that parties unable to file for that reason should not be penalized. Fed. R. Civ. P. 6(a) advisory committee's note to 1985 amendment. The 2009 Amendments to Rule 6—which brought the Rule to its present form—struck the specific reference to "weather or other conditions" from the text. Fed. R. Civ. P. 6(a)(3) advisory committee's note to 2009 amendment. That deletion is notable for two reasons. First, the amendment expanded the circumstances in which the clerk's office might be deemed "inaccessible" under the Rule without altering the understanding that closure due to inclement weather extended the time for filing. *See id.* (noting that "[w]eather can still be a reason for inaccessibility of the clerk's office"). The notes accompanying the amendment explain that the changes contained therein were, in part, intended "to underscore that inaccessibility can *occur for reasons unrelated to weather*, such as an outage of the electronic filing system." *Id.* (emphasis added). Second, the amendment's drafters were clearly aware of the advent of

6

electronic filing—after all, the rule itself accounts for it, *see, e.g.*, Fed. R. Civ. P. 6(a)(4)—yet did not amend the Rule so as to treat the clerk's office as accessible at all times when the electronic filing system is available. That decision makes sense because not all parties file electronically. In this District Court, for example, pro se litigants may file electronically only with permission. LCvR 5.4(b)(2). There is simply nothing in the text of Rule 6 or its Notes that supports a reading of the word "inaccessibility" that turns on whether a party has access to electronic filing.

Defendant's reading of Rule 6 also runs afoul of Circuit precedent. In *Telephone & Data Systems, Inc. v. Amcell Atlantic City, Inc.*, the D.C. Circuit considered whether to dismiss an appeal where the appellant had filed its notice of appeal two days after the 30-day filing period had run. 20 F.3d 501, 501 (D.C. Cir. 1994). The court held that the appellant's notice of appeal was nonetheless timely under Rule 6, because the "courthouse, including the district court clerk's office, . . . [was closed] due to inclement weather" both on the date the notice was due and on the following day, which rendered the clerk's office inaccessible for those two days. *Id.* In so holding, the court specifically rejected the argument that "the clerk's office was not 'inaccessible' because it was physically possible to file papers in the district court's 24-hour 'drop box.'" *Id.* To accept that view, the court reasoned, would be "plainly inconsistent with the 'considerations of liberality and leniency which find expression in Rule 6(a).'" *Id.* (quoting *Union Nat'l Bank v. Lamb*, 337 U.S. 38, 41 (1949)).

The rationale of *Telephone & Data Systems* extends to this case. The mere fact that a party can file a document in some way—whether by drop-box or electronic filing—does not render the clerk's office accessible for purposes of Rule 6 when it is otherwise physically closed due to inclement weather. Applying that principle here, the court concludes that, even though Plaintiff was required under Rule 6 to file her Complaint by January 25, 2016, she nonetheless timely filed

7

suit on January 27, 2016—the first date that the courthouse, and clerk's office, reopened to the public following closure due to inclement weather.

### B. Whether Plaintiff Has Sufficiently Pleaded Claims of Age Discrimination and Retaliation Under the ADEA

Defendant's remaining grounds for dismissal concern the sufficiency of the Complaint. Defendant contends that Plaintiff has failed to state a claim because (1) Defendant is not a covered employer under the ADEA and, thus, is not subject to the Act's requirements; (2) Plaintiff failed to allege an adverse employment action as required to state claims of retaliation and discrimination under the ADEA; and (3) Plaintiff failed to show that any action Defendant took impacting Plaintiff's employment was motivated by discriminatory animus. *See* Def.'s Mot. at 8–16. The court addresses each argument in turn.

#### 1. *Whether Defendant is Subject to the ADEA*

Defendant contends that Plaintiff cannot state a claim under the ADEA because, as a foreign embassy operating in the United States, it is not subject to the Act as a matter of law. *See id.* at 8–12. For that proposition, Defendant cites to the ADEA itself, which provides that the Act's "prohibitions . . . shall not apply where the employer is a foreign person not controlled by an American employer." 29 U.S.C. § 623(h)(2). Courts have grappled with the precise meaning of Section 623(h)(2), for a literal reading of its text arguably supports Defendant's position that American workers employed by foreign employers in the United States do not enjoy the ADEA's protections. *See, e.g.*, *Robinson v. Overseas Military Sales Corp.*, 827 F. Supp. 915, 920 (E.D.N.Y. 1993) ("It is clear that foreign corporations are not subject to the prohibitions of the ADEA."). The meaning of Section 623(h)(2) remains unsettled in this Circuit. Therefore, the court looks outside the Circuit for guidance.

The Second Circuit's decision in *Morelli v. Cedel*, 141 F.3d 39 (2d Cir. 1998), provides the most comprehensive analysis of Section 623(h)(2) to date. In *Morelli*, a plaintiff working in the New York branch of a Luxembourg bank brought an ADEA claim against her employer. *See id.* at 41. The district court dismissed the claim on the ground that the ADEA did not apply to the defendant. *Id.* The Second Circuit reversed. The appellate court framed the question on appeal as follows: "Does the ADEA cover a U.S.-based branch of a foreign employer?" *Id.* At the outset, the court acknowledged, as Defendant contends here, that "[a]n absolutely literal reading of § [623(h)(2)] might suggest that the ADEA . . . does not apply to the *domestic* operations of foreign employers—unless there is an American employer behind the scenes." *Id.* at 42. The court held, however, that such an "absolutely literal reading" betrayed the legislative purpose of the statute and, thus, ran afoul of Congress' intent. The court explained that Section 623(h)(2) was part of a series of amendments to the ADEA, passed in 1984, designed to overturn decisions which had held that the ADEA did not apply to U.S. citizens working outside the United States for American employers. *See id.* The 1984 Amendments accomplished that purpose by amending the definition of employee to include "any citizen of the United States who is employed by an American employer in a workplace outside the United States." *Id.* at 42–43 (quoting Pub. L. No. 98–459, § 802(a) (1984)). Congress also passed, as part of the same legislative package, corresponding amendments, including Section 623(h)(2), designed to ensure that the extra-territorial reach of the ADEA "conform[ed] . . . to 'the well-established principle of sovereignty, that no nation has the right to impose its labor standards on another country.'" *Id.* at 43 (quoting S. Rep. 98–467, at 27–28 (1984)). Read in light of those stated intentions, the Second Circuit held that Section 623(h)(2)

> merely limits the scope of the amended definition of employee, so that an employee at a workplace in a foreign country is not protected under the ADEA if the employer is a foreign person not controlled by an American employer. There is no evidence in the legislative

9

> history that these amendments were intended to restrict the application of the ADEA with respect to *domestic* operations of foreign employers.

*Id*. at 43 (citation omitted). The Second Circuit found additional support for its reading of Section 623(h)(2) by comparing that section to the parallel sections of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act, both of which afford protection to U.S. employees of a foreign company's domestic operations. The court remarked that "[i]t is not apparent why the domestic operations of foreign companies should be subject to Title VII and the ADA, but not the ADEA." *Id*. Finally, the court explained that its interpretation of Section 623(h)(2) was consistent with the "remedial and humanitarian" nature of the ADEA, as well as its purpose of promoting employment of older persons. *Id*. Based on those reasons, the court held that the ADEA applied to employees of the Luxembourg bank's branches in the United States. *Id*. at 44.

This court finds the Second Circuit's conclusion and reasoning persuasive. In fact, it appears that every other court to consider Section 623(h)(2) since *Morelli* has adopted its reading of the statute. *See, e.g.*, *Downey v. Adloox Inc.*, No. 16-1689, 2017 WL 816141, at *4 (S.D.N.Y. Feb. 28, 2017) (collecting cases); *Loffredo v. Dailmer AG*, 54 F. Supp. 3d 740 (E.D. Mich. Sept. 22, 2014); *Bass v. Technip USA Corp.*, No. 05-0652, 2005 WL 1185626, at *7–8 (S.D. Tex. May 6, 2005). Accordingly, the court holds that Defendant is subject to the ADEA.

### 2. *Whether Plaintiff Has Adequately Pleaded a Discrimination Claim*

Defendant next argues that Plaintiff has not stated a claim for discrimination under the ADEA because she has not alleged an adverse employment action motivated by age discrimination. Def.'s Mot. at 12–16. For purposes of a discrimination claim, an "adverse employment action" is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing

significant change in benefits." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (internal quotation marks omitted). A plaintiff must demonstrate "objectively tangible harm," *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002), which "in most cases [involves] *direct* economic harm," *Douglas*, 559 F.3d at 552 (internal quotation marks omitted). Critically, "not everything that makes an employee unhappy is an actionable adverse action." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001).

Plaintiff points primarily to her noticed termination as an adverse action and claims that "the decision to discharge [was] complete when made," and therefore is actionable discrimination even though she was never actually terminated. Pl.'s Opp'n at 6. She is wrong. "An employer may cure an adverse employment action . . . before that action is the subject of litigation." *See Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003); *cf. Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (finding that proposed suspension did not constitute adverse employment action where the suspension was never actually served); *Harrison v. Office of the Architect of the Capitol*, 964 F. Supp. 2d 81, 98 (D.D.C. 2013) (finding that unrealized notice of reprimand did not constitute adverse employment action), *aff'd*, No. 14-5287, 2015 WL 5209639 (D.C. Cir. July 16, 2015). That is precisely what Defendant did here when it rescinded its notice of termination before Plaintiff filed this action. That rescission cured any adversity and precludes a discrimination claim based on the mere notice of termination.[4]

Plaintiff also alleges that Defendant discriminated against her based on her age because it offered the "more favorable" "administrative position" in the Secretary General's office to her younger co-worker, Ngandjeu. Compl. ¶¶ 39–40. Plaintiff does not allege that the "administrative

---

[4] Plaintiff also appears to argue that her discrimination claim can proceed because she suffered emotional harm as a consequence of receiving the notice of termination. *See* Pl.'s Opp'n at 6. Plaintiff, however, cites no authority that would permit her to recover for emotional harm stemming from a proposed adverse action that her employer never ultimately carried out.

11

position" she wanted would have improved her pay or benefits, or that it involved a promotion in either form or substance; therefore, the court treats her discrimination claim as an alleged denial of a lateral transfer. *See Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999). Establishing such a claim is a formidable task. As the D.C. Circuit has explained: "[A] plaintiff . . . who is denied a lateral transfer . . . does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities." *Id*. Here, all Plaintiff alleges is that the job in the Secretary General's office was "more favorable" because "the workload is more bearable." Compl. ¶ 41. That allegation does not rise to the level of a materially adverse action. *See, e.g.*, *Lester v. Natsios*, 290 F. Supp. 2d 11, 29 (D.D.C. 2003) (explaining that allegations pertaining to "'[i]ncreased workloads' and undesirable work assignments . . . do not rise to the level of adverse employment actions"); *see also Forkkio*, 306 F.3d at 1130–31 (explaining that "[p]urely subjective injur[y], such as dissatisfaction" with an employment assignment, does not rise to the level of an adverse employment action); *Brody*, 199 F.3d at 457 ("Mere idiosyncrasies of personal preference are not sufficient to state an injury.").

Accordingly, Plaintiff fails to allege the kind of change affecting the terms, conditions, or privileges of her employment that would allow her to proceed with her denial-of-transfer claim. The court therefore grants Defendant's Motion with respect to Plaintiff's age discrimination claim.

### 3. *Whether Plaintiff Has Adequately Pleaded a Retaliation Claim*

Defendant likewise moves to dismiss Plaintiff's retaliation claim for failure to allege an adverse action. Def.'s Mot. at 12. "To prove retaliation [under the ADEA], the plaintiff generally must establish that he or she suffered [i] a materially adverse action [ii] because he or she had brought or threatened to bring a discrimination claim." *Baloch*, 550 F.3d at 1198 (D.C. Cir. 2008).

"'Adverse actions' in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim." *Id.* at 1198 n.4. In the retaliation context, instead of requiring a significant change in employment status to constitute adversity, an action is adverse if it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006).

Plaintiff's retaliation claim meets that standard. Plaintiff alleges that, after filing her complaint with the EEOC, Defendant retaliated against her by "nearly doubl[ing]" her workload in an effort to "pressure her to quit by overwhelming her with work." Compl. ¶¶ 44, 46. That allegation satisfies the adversity requirement for a retaliation claim because "[a] reasonable employee might well be dissuaded from filing an EEOC complaint if she thought her employer would retaliate by burying her in work." *Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010); *see Walden v. Patient-Centered Outcomes Research Inst.*, 177 F. Supp. 3d 336, 343–344 (D.D.C. 2016).[5] Plaintiff's retaliation claim therefore survives Defendant's Motion to Dismiss.

### 4. Whether Plaintiff Has Shown Discriminatory Animus

Finally, Defendant contends that Plaintiff's Complaint should be dismissed "for failure to show any genuine issues of fact" establishing Defendant's discriminatory animus. Def.'s Mot. at

---

[5] Plaintiff also appears to allege a second adverse action as part of her retaliation claim—her non-selection for the administrative position in the Secretary General's office. *See* Compl. ¶ 39. The D.C. Circuit appears not to have decided whether the denial of a lateral transfer, as here, that does *not* involve a change in pay, benefits or responsibilities nevertheless can constitute adversity for purposes of a retaliation claim. In the absence of guiding precedent, some courts in this District have applied the requirements of *Brown v. Brody* to establish adversity in the retaliation context. *See, e.g., Buie v. Berrien*, 85 F. Supp. 3d 161, 178 (D.D.C. 2015); *Hines v. Bair*, 594 F. Supp. 2d 17, 25–26 (D.D.C. 2009). It is not to clear to this court whether that is the correct approach, given the Supreme Court's statement that adversity is a broader concept in the retaliation context. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68. This court need not, however, resolve that issue now. Here, Plaintiff has not even alleged *when* the denial of the lateral transfer occurred—whether before or after the filing of the EEOC complaint—thereby making it impossible for the court to assess whether there might be a causal connection between Plaintiff's protected activity and the denied transfer. Thus, at the pleading stage, Plaintiff has not shown that the denial of the lateral transfer makes out a claim of retaliation.

13

12–13. That argument is premature. Whether an employer's actions were motivated by discriminatory animus or a valid non-discriminatory reason is a quintessential question of fact that cannot readily be resolved on a motion to dismiss. *See Williams v. Shinseki*, 161 F. Supp. 3d 77, 80 (D.D.C. 2011). Here, Plaintiff has not yet had the opportunity to take discovery to support her sufficiently pleaded retaliation claim. Accordingly, the court will not dismiss Plaintiff's retaliation claim for failure to establish a genuine dispute of fact.

## V. CONCLUSION AND ORDER

For the foregoing reasons, the court grants in part and denies in part Defendant's Motion to Dismiss. Plaintiff may proceed with her retaliation claim, but not her age discrimination claim under the ADEA.

Dated: June 5, 2017

Amit P. Mehta
United States District Judge